# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASMIN TALIADOURES**<br>22 Framstead Lane, Unit 409<br>Sudbury, MA 01776,<br><br>**THE ESTATE OF MOHAMMAD GHOLI MALEKPOUR**<br>by and through its Personal Representative,<br>JASMIN TALIADOURES,<br>22 Framstead Lane, Unit 409<br>Sudbury, MA 01776<br><br>**MONIREH MALEKPOUR**<br>11946 80th Pl NE<br>Kirkland, WA  98034<br><br>**SHEHERA BARNES**<br>8569 West Olympic Boulevard<br>Los Angeles, CA 90035<br><br>**FARZINDOKHT MALEKPOUR**<br>Land of Peace Assisted Living<br>6624 Sale Avenue,<br>West Hills, CA 91307<br><div align="center">Plaintiffs,</div>v.<br><br>**ISLAMIC REPUBLIC OF IRAN**, and<br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street, Tehran, Iran<br><br>**NATIONAL IRANIAN OIL COMPANY**<br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street, Tehran, Iran<br><br>**NATIONAL IRANIAN TANKER COMPANY**<br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street, Tehran, Iran<br><div align="center">**Defendants.**</div> | **Case: 1:26-CV-23** |

**COMPLAINT**

1. This action arises from the barbaric and unlawful arrest, torture, prolonged imprisonment, and resulting death of Mohammad Gholi Malekpour, a naturalized United States citizen, by agents of the Islamic Republic of Iran during periods of detention in Iran from 2008 to March 2010 and from July 2010 to May 2014. The Iranian regime's agents engaged in these heinous acts to coerce Mr. Malekpour, a U.S. national, into relinquishing his rightful properties, demonstrating Iran's contempt for international law and human rights. The detention and intelligence system responsible was financed by revenues from the National Iranian Oil Company ("NIOC") and National Iranian Tanker Company ("NITC"), state-owned instrumentalities whose funds integrate into Iran's national budget and support its security, interrogation, and prison infrastructure. Plaintiffs, Mr. Malekpour's surviving family and the Personal Representative of his Estate, seek relief under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, for torture, unlawful detention, and related harms.

2. Iranian agents subjected Mr. Malekpour to arbitrary detention, severe physical and psychological abuse including solitary confinement, denial of food and water, regular beatings, denial of medical care, and other inhumane treatment, all in a calculated effort to break his will and force him to sign over his properties. These acts of state-sponsored brutality against a U.S. citizen exemplify Iran's systematic use of torture to expropriate assets from individuals, causing prolonged suffering, health decline, post-traumatic stress disorder ("PTSD"), mental anguish, and premature death.

3. Plaintiffs invoke the FSIA's state-sponsored terrorism exception, 28 U.S.C. § 1605A(a) and (c). Iran, through its agents and with financial support from NIOC and NITC, committed acts of torture and inhumane treatment in violation of international norms. Plaintiffs, all U.S. nationals, seek compensatory and punitive damages for these state-sponsored terrorism acts enabled by NIOC and NITC revenues.

JURISDICTION AND VENUE

4. Subject-matter jurisdiction exists under 28 U.S.C. § 1330(a) and § 1605A(a). Iran is designated a state sponsor of terrorism since January 19, 1984, per § 1605A(a)(2)(A)(i). Mr. Malekpour was a U.S. national at the time of the acts occurring after his naturalization in 2012, and the ongoing nature of his detention and torture constitutes continuing acts under § 1605A(a)(2)(A)(ii). The alleged conduct (torture and detention) falls under § 1605A(a)(1), with a federal cause of action under § 1605A(c). Jurisdiction attaches upon service per 28 U.S.C. § 1608(a).

5. Personal jurisdiction attaches under 28 U.S.C. § 1330(b) upon service. Defendants lack immunity under § 1605A(a) for torture. NIOC and NITC are agencies or instrumentalities of Iran under § 1605A, as wholly state-owned entities generating revenues integrated into Iran's budget to finance security and detention systems responsible for Mr. Malekpour's harms.

6. Venue is proper under 28 U.S.C. § 1391(f)(4), as Iran is a designated state sponsor of terrorism.

**PARTIES**

7. Plaintiff Jasmin Taliadouros is a U.S. citizen residing in Massachusetts. She is the daughter of the decedent, Mohammad Gholi Malekpour, and serves as the Personal Representative of his Estate. In her capacity as Personal Representative, she brings claims on behalf of the Estate for survival and wrongful death, seeking compensation for the decedent's pain and suffering, as well as losses to his beneficiaries.

8. Plaintiff Monireh Malekpour is a U.S. citizen residing in Washington. She is the sister of the decedent and provided him with shelter and care after his return to the United States in 2014, witnessing firsthand the ongoing physical and psychological effects of his torture and imprisonment. She contributed substantially to his medical and living expenses, including expending her pension, selling her house in Iran, and liquidating shares in Malekshar and other cash assets.

9. Plaintiff Shehera Barnes is a U.S. citizen residing in California. She is the daughter of the decedent and endured profound emotional distress from his prolonged absence, suffering, and eventual death, including the loss of his guidance and familial support. She contributed funds to his medical care.

10. Plaintiff Farzindokht Malekpour is a U.S. citizen residing in California. She is the wife of the decedent and suffered the direct impacts of his persecution, including separation during his imprisonment, financial hardship from attempted asset coercion, and the burden of his declining health until his death.

11. The Estate of Mohammad Gholi Malekpour is being administered in Washington, with Jasmin Taliadouros as Personal Representative. The Estate pursues claims for the decedent's pre-death injuries and distributes any recovery to statutory beneficiaries.

12. Plaintiffs meet § 1605A(a)(2)(A)(ii)'s nationality requirement, as the decedent was a U.S. national at the time of the acts occurring after his naturalization in 2012, with ongoing detention and torture constituting continuing violations. Mr. Malekpour became a naturalized U.S. citizen in 2012, during his imprisonment in Iran. Documentary proof of nationality will be submitted with a default judgment motion per § 1608(e).

13. The Estate, via its Personal Representative, pursues survival and wrongful death claims under applicable state law and § 1605A(c).

14. Defendant Islamic Republic of Iran is a foreign state designated a state sponsor of terrorism since January 19, 1984. Through its agents, ministries, and instrumentalities, Iran maintains a system of detention, intelligence, and security operations that engage in torture, arbitrary detention, and human rights abuses, funded by state revenues, in a reprehensible pattern of targeting U.S. persons to seize their properties through coercion and violence.

15. Defendant NIOC is a wholly state-owned enterprise under the direction of Iran's Ministry of Petroleum. NIOC is responsible for the exploration, production, refining, and sale of Iran's oil and natural gas resources, which constitute the primary source of revenue for the Iranian government. These revenues are integrated into Iran's national budget and appropriated to fund governmental operations, including the security and detention apparatus that perpetrated the acts against Mr. Malekpour. As Iran's largest oil producer and exporter, NIOC generates billions in annual revenue, enabling the regime's repressive activities.

16. NIOC's financial contributions directly support Iran's ability to maintain and operate its network of prisons, intelligence agencies, and security forces, which systematically

engage in torturous activities such as arbitrary detention, physical abuse, and denial of medical care. Without NIOC's dominant role in generating export revenues, often exceeding 50% of Iran's total government income, the regime would lack the fiscal capacity to sustain these operations, including the facilities and personnel responsible for Mr. Malekpour's torture and imprisonment.

17. Defendant NITC is a wholly state-owned enterprise controlled by the Iranian government. NITC operates one of the world's largest tanker fleets and is primarily responsible for the maritime transportation and export of Iranian oil and petroleum products. This role generates substantial revenue for Iran, which is funneled into the national budget to support state functions, including the intelligence and prison systems involved in Mr. Malekpour's torture and detention. Together with NIOC, NITC forms a critical component of Iran's oil industry, providing the financial means for state-sponsored human rights violations.

## STANDING OF PLAINTIFFS

18. Jasmin Taliadouros has standing for solatium damages as the decedent's daughter and to pursue Estate claims. She contributed funds to his care, including selling jewelry valued in excess of $18,000.
19. Monireh Malekpour has standing for solatium damages as the decedent's sister.
20. Shehera Barnes has standing for solatium damages as the decedent's daughter.
21. Farzindokht Malekpour has standing for solatium damages as the decedent's wife.
22. The Estate has standing for survival damages (pain and suffering) and wrongful death claims for beneficiaries under state law and § 1605A(c).

STATEMENT OF FACTS

23. Mohammad Gholi Malekpour was a prominent architect and real estate developer, renowned for his innovative designs and contributions to development projects, including the construction of the city of Malekshar in Isfahan, which he built and developed prior to the Iranian Revolution. His professional achievements earned him respect and established him as a trusted figure in his field. Personally, he was a dedicated family man, providing emotional and financial support to his wife, daughters, and sister.

24. Mr. Malekpour became a naturalized United States citizen in 2012. Prior to and continuing after his naturalization, he was subjected to imprisonment in Iran in connection with the unjust and unlawful confiscation of his properties and assets by Iranian authorities. These properties included his main house, the entire city of Malekshar in Isfahan (encompassing residential, commercial, and infrastructural developments), and other real estate holdings acquired during the pre-revolutionary regime under the Shah. While authorities unlawfully seized many of his assets outright, his inheritance could not be fully confiscated without his coerced signature, prompting the regime to escalate its barbaric tactics to force compliance.

25. In a blatant violation of human rights and international law, Iranian authorities arbitrarily arrested and detained Mr. Malekpour without formal charges, due process, or any legitimate justification. He was imprisoned for approximately two years and three months from 2008 to March 2010, and then for approximately three years and ten months from July 2010 to May 2014, totaling over six years of detention in deplorable conditions. This prolonged incarceration was a direct instrument of the Iranian regime's policy to torture

U.S. persons and others to extract their properties, reflecting a systemic pattern of state-sponsored extortion through violence.

26. During his imprisonment, Mr. Malekpour endured systematic and sadistic torture and inhumane treatment by Iranian agents acting under official authority. This included prolonged solitary confinement in a "black hole" cell, designed to induce severe psychological distress and isolation; deliberate denial of food and water for extended periods to weaken his resolve; regular and brutal physical abuse, including beatings that caused lasting injuries; denial of adequate medical care, exacerbating his deteriorating health; and other forms of degradation and humiliation. These atrocities were inflicted with the explicit intent to coerce him into signing documents releasing his claims and conveying full ownership of his properties, including his inheritance, to various Iranian state entities outside of any judicial process. Mr. Malekpour, demonstrating remarkable resilience, refused to comply despite the regime's relentless efforts to break him physically and mentally. The Iranian government's use of such torture to seize properties from a U.S. citizen is a condemnable affront to civilized norms and underscores the regime's disregard for the sanctity of human life and property rights.

27. These acts occurred within Iran's state-run detention and intelligence network, financed through revenues from NIOC and NITC. As the primary entities handling the sale and transportation of Iranian oil, accounting for the majority of Iran's export earnings, these instrumentalities provide the financial backbone for the regime's repressive infrastructure, enabling the perpetration of torture against U.S. nationals like Mr. Malekpour to facilitate illegal property seizures.

28. Due to his critically deteriorating health from the cumulative effects of the torture, neglect, and abuse, Mr. Malekpour was eventually released in May 2014 and instructed to leave Iran immediately to avoid his death in custody, which the regime sought to evade for propaganda purposes. He returned to the United States in 2014, residing with his sister, Plaintiff Monireh Malekpour. The long-term effects of his torture manifested in severe physical and psychological issues, including chronic medical conditions, PTSD, profound mental anguish, mobility impairments, and organ damage requiring ongoing treatment.

29. His family, including Plaintiffs, incurred substantial medical, nursing, and living expenses exceeding $100,000, as well as funeral costs exceeding $25,000. These expenses were borne entirely by Plaintiffs and other family members, with significant contributions from the decedent's siblings (including Plaintiff Monireh Malekpour's pension, sale of her Iranian house, liquidation of Malekshar shares, and cash reserves) and his daughters (including funds from the sale of personal jewelry).

30. On November 25, 2021, Mr. Malekpour died in the United States from complications directly attributable to the torture, inhumane treatment, PTSD, mental anguish, and health decline inflicted during his detention. The detention system responsible was sustained by revenues from NIOC and NITC, which dominate Iran's oil sector and generate the bulk of the government's income, thereby funding Iran's odious practice of torturing U.S. persons to appropriate their assets.

31. As a result of Mr. Malekpour's persecution, imprisonment, and death, Plaintiffs have suffered severe mental anguish, including grief, anxiety, and depression; financial hardships from lost family support and care costs; and the permanent loss of his

companionship, guidance, and affection. The Iranian regime's actions represent a profound moral and legal outrage, warranting the strongest condemnation for its use of torture as a tool of property theft against U.S. citizens.

32. Iranian Regime took properties from Mr. Malekpour without due process and without any legal justification under International Law.

**CHOICE OF LAW**

33. Washington's law (RCW §§ 4.20.046, 4.20.010 et seq.) governs survival and wrongful death claims, as the Estate is administered there, applied with § 1605A(c). Washington's interest prevails as the Estate's domicile. Federal common law under § 1605A(c) supplements, ensuring uniform punitive damages assessment across jurisdictions.

**CAUSES OF ACTION**

**COUNT I – TORTURE (28 U.S.C. § 1605A(c))**

34. Plaintiffs incorporate by reference all preceding paragraphs.

35. Defendants' agents inflicted severe physical and mental pain and suffering upon Mr. Malekpour for the purposes of coercion, punishment, and intimidation, constituting torture under § 1605A(h)(7) and the Torture Victim Protection Act. These acts, funded by NIOC and NITC revenues, caused Mr. Malekpour's injuries, suffering, and death, and inflicted profound emotional distress upon his immediate family members. The Estate seeks survival damages for the decedent's pre-death pain and suffering, and the individual Plaintiffs seek solatium damages for their emotional injuries.

**COUNT II – WRONGFUL DEATH – Extra Judicial Killing (28 U.S.C. § 1605A(c))**

36. Plaintiffs incorporate by reference all preceding paragraphs.

37. Defendants' torturous conduct proximately caused Mr. Malekpour's premature death. The Estate seeks damages on behalf of the beneficiaries for pecuniary losses, loss of society, and other harms under state law and § 1605A(c).

38. Defendants are liable under § 1605A for these acts committed by agents in state-funded systems. Punitive damages are warranted to punish Defendants and deter future misconduct, particularly Iran's reprehensible practice of torturing U.S. persons to seize their properties.

**Count III- EXPROPRIATION IN VIOLATION OF INTERNATIONAL LAW (28 U.S.C. § 1605(a)(3))**

39. Plaintiffs incorporate by reference all preceding paragraphs.

40. Defendants unlawfully expropriated Mr. Malekpour's rights in property located in Iran, including his main house, the entire city of Malekshar (encompassing residential, commercial, and infrastructure developments), and his inheritance rights, without compensation and in violation of international law. These takings included direct seizures and coercive efforts during his imprisonment from 2008 to 2014, with key acts post-2012 when he was a U.S. national, depriving him and his Estate of economic benefits.

41. As a proximate result, the Estate and Plaintiffs suffered economic losses exceeding millions in property value, plus lost income and opportunities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request:

A. Compensatory damages in the amount of $10,000,000 to each individual Plaintiff (Jasmin Taliadouros, Monireh Malekpour, Shehera Barnes, and Farzindokht Malekpour) and $10,000,000 to the Estate for pain and suffering, solatium, economic losses including medical and funeral expenses exceeding $125,000, and other harms;

B. Punitive damages in the amount of $20,000,000 to each individual Plaintiff and $20,000,000 to the Estate to deter similar conduct;

C. Compensatory Damages and other applicable damages under Claim III;

C. Attorneys' fees and costs;

D. Other just relief.

Respectfully submitted,

                                              __/s/ *Ali Herischi*_____
                                              Ali Herischi, Esq. (MD0024)
                                              Herischi & Associates LLC
                                              11300 Rockville Pike, Ste 712
                                              N Bethesda, MD 20852
                                              ali.herischi@ibhlaw.com
                                              Tel.: 301.363.4540
                                              *Counsel for Plaintiffs*